IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BRENDA KAY JOHNSON,         ) | |
| ) | |
| Plaintiff,       ) | |
| ) | |
| v.                                                 ) | CIV. ACT. NO. 1:13cv658-TFM |
| ) | (WO) |
| CAROLYN W. COLVIN,            ) | |
| Acting Commissioner of Social Security,  ) | |
| ) | |
| Defendant.      ) | |
| ) | |

**MEMORANDUM OPINION**

**I. PROCEDURAL HISTORY**

Plaintiff Brenda Kay Johnson ("Johnson" or "Plaintiff") applied for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, alleging that she is unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ concluded that Johnson was not under a "disability" as defined in the Social Security Act. The ALJ, therefore, denied Plaintiff's claim for benefits. Johnson submitted a request for review to the Appeals Council. Upon considering Johnsons' request, the Appeals Council vacated the ALJ's decision and remanded the case with directions that the ALJ should conduct further proceedings and issue a new decision. A supplemental hearing was conducted on July 15, 2011. Following this proceeding, the ALJ denied the claim. The Appeals Council rejected a subsequent request for review. Consequently, the ALJ's

decision became the final decision of the Commissioner of Social Security ("Commissioner").[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Pursuant to 28 U.S.C. § 636(c), the parties have consented to entry of final judgment by the United States Magistrate Judge. The case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1631(c)(3). Based on the court's review of the record in this case and the parties' briefs, the court concludes that the Commissioner's decision should be AFFIRMED.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

> To make this determination, the Commissioner employs a five-step, sequential

evaluation process. See 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[2]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which supports the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. THE ISSUES

**A.    Introduction**

Johnson was 49 years old when she applied for supplemental security income and has an eighth grade education. (R. 95). She has prior work experience as a poultry dresser and security guard. (R. 86). Johnson alleges that she became disabled on June 1,

---

[2] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

2006, due to knee swelling, back and knee pain, carpal tunnel syndrome, COPD, glaucoma, headaches, and fatigue. (R. 73, 77-78, 100, 104, 245). After the hearing on July 15, 2011, the ALJ found that Johnson suffers from status post right carpal and cubital tunnel release with carpal tunnel on the left, hypertension, left ventricular hypertrophy, neuropathy, diabetes, obesity, and asthma. (R. 25). The ALJ found that Johnson is unable to perform her past relevant work, but that she retains the residual functional capacity to perform light work with the following limitations:

> The claimant's specific physical capabilities during the period of adjudication have been the ability to lift/carry up to 20 pounds occasionally and 10 pounds frequently; alternate sitting/standing, but would not need to leave the workstation; climb stairs/ramps, bend, stoop, kneel, crouch and crawl occasionally; and handle, finger and feel frequently. The claimant could work in a job that would not require her to climb ladders/scaffolds/ropes, work at unprotected heights, with dangerous equipment, in temperature extremes, in humidity and wetness extremes and with exposure to concentrated environmental pollutants.

(R. 29). Testimony from a vocational expert led the ALJ to conclude that a significant number of jobs exist in the national economy that Johnson can perform, including work as a mail clerk, garment folder, and electrical accessories assembler. (R. 42-43). Accordingly, the ALJ concluded that Johnson is not disabled. (R. 43).

### B. Plaintiff's Claims

Johnson presents the following issues for this court's consideration:

(1) The Commissioner's decision should be reversed as the ALJ's finding failed to properly define the sit/stand option as required under Social Security Ruling 96-9p.

  (2)  The Commissioner's decision should be reversed because the ALJ erred by failing to complete the record in not recontacting Johnson's treating physician, Dr. Lance K. Dyess.

(Pl's Br., p. 4).

## IV. DISCUSSION

  A.  **The Sit-Stand Option**

  Johnson asserts that the ALJ's determination that she has the residual functional capacity to perform light work with limitations is not supported by substantial evidence. Specifically, she argues the ALJ failed to conduct a function-by-function analysis in compliance with SSR 96-8p before determining that she has the residual functional capacity to perform light work. Johnson contends that the ALJ failed to define the frequency in which she would need to alternate positions and the length of time she is able to sit or stand. She argues that the ALJ should have further developed the record and resolved inconsistencies by re-contacting her treating physician before determining her residual functional capacity to perform light work with a sit/stand option.

  An ALJ is required to independently assess a claimant's residual functional capacity "based upon all of the relevant evidence." 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level. . ., the administrative law judge . . . is responsible for assessing your residual functional capacity."). *See also Lewis*, 125 F.3d at 1440 ("The residual functional capacity is an assessment, based upon all of the relevant evidence, of a

claimant's remaining ability to do work despite his impairments."). "Residual functional capacity, or RFC, is a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Peeler v. Astrue*, 400 Fed. Appx. 492, 494 n.2 (11th Cir. 2010) (citing 20 C.F.R. § 416.945(a)).

In determining the effect of Johnson's impairments on her residual functional capacity to perform light work, the ALJ found:

> I note that Dr. Dyess' responses in the CAP forms in Exhibits 6F and 28F are identical, indicating that her pain has not significantly changed since 2007. Dr. Dyess' opinion in this regard is consistent with the above residual functional capacity.
>
> Dr. Dyess' PCE forms in Exhibits 6F and 29F show a range of light work. There is a distinction between the current residual functional capacity and Dr. Dyess' most recent residual functional capacity in that he says the claimant can stand and walk 2 hours a day; and I have a sit/stand opinion. These residual functional capacities are not inconsistent; it is just that Dr. Dyess is limited by the nature of the form. The testimony of [the] vocational expert is for jobs that can be performed with position changes, as discussed in detail below. Therefore I am giving some weight to Dr. Dyess' PCE and CAP in Exhibits 28F and 29F. However, I give little weight to Dr. Dyess' statement that the claimant is likely to be absent from work as a result of the impairments or treatment more than 4 days per month. As noted above, Dr. Dyess' records show generally benign findings, which is inconsistent with his degree of absenteeism.

(R. 41).

The ALJ's findings regarding Johnson's ability to stand and/or walk are fully supported by the evidence, including her treating physician's medical records. On November 14, 2007, Dr. Lance K. Dyess completed a Clinical Assessment of Pain form in which he found that "[p]ain is present but does not prevent functioning everyday

activities or work," that physical activity would cause "[s]ome increase [of pain] but not to such an extent as to prevent adequate functioning in such tasks," and that "[s]ome limitations [from side effects of prescribed medication] may be present but not to such a degree as to create serious problems in most instances." (R. 384). Dr. Dyess also completed a Physical Capacities Evaluation form, in which he found Johnson would be able to lift and/or carry twenty pounds occasionally to ten pounds frequently during a normal workday. (R. 385). In addition, he found that she is able to sit between zero to one hour at a time and five to six hours total during an eight-hour workday and stand or walk between one to two hours total during an eight-hour workday. *Id*. He also found that Johnson does not require the use of an assistive device, that she can frequently engage in push and pull movements involving arm and/or leg controls, and that she would likely be absent from work more than four days per month. *Id.* Dr. Dyess' opinion was based on Johnson's "knee [and] ankle/lower leg pain." (R. 385).

On July 14, 2011, Dr. Dyess completed an additional Clinical Assessment of Pain form, in which he found that "[p]ain is present but does not prevent functioning everyday activities or work," that physical activity would cause "[s]ome increase [of pain] but not to such an extent as to prevent adequate functioning in such tasks," and that "[s]ome limitations [from side effects of prescribed medication] may be present but not to such a degree as to create serious problems in most instances." (R. 648). He also completed a Physical Capacities Evaluation form, in which he found that Johnson is able to sit six to seven hours and stand or walk one to two hours during an eight-hour workday. (R. 649). Dr. Dyess found that Johnson does not require the use of an assistive device and that she

7

is able to occasionally engage in pushing and pulling movement and never climb stairs or ladders. *Id*. Dr. Dyess also found that Johnson would most likely be absent from work more than four days per month. *Id*. Dr. Dyess noted that the reasons for his findings were based on Johnson's exertional dypsnea, diabetes, hypertension, glaucoma, diplopia, and recent complaints of left upper extremity paresis. *Id*.

The ALJ's finding that the medical records do not support Dr. Dyess' opinion that Johnson would be absent from work for more than four days per month is likewise supported by substantial evidence. As noted by the ALJ, Dr. Dyess' medical records show "generally . . . benign findings." (R. 30). For example, x-rays of Johnson's chest and left lower leg and knee were normal. (R. 567, 613, 703-04). In addition, Johnson's diabetes is well controlled when she takes her medication. (R. 612, 614). The medical records also indicate that Dr. Dyess repeatedly advised Johnson to exercise, lose weight, stop smoking, and maintain a strict diet. (R. 558, 560-63, 612, 615, 660, 662).

Johnson also argues that the ALJ should have sought additional information from Dr. Dyess. Specifically, she argues the ALJ's finding that Physical Capacities Evaluation Form is limited coupled with his determination that Dr. Dyess' handwriting is illegible establishes that the ALJ should have re-contacted the treating physician. An ALJ has a duty to develop a full and fair record. *Kelley v. Heckler*, 761 F.2d 1538 (11th Cir. 1985). This court has reviewed Dr. Dyess' notations in the medical record, as well as his findings in the residual functional capacity questionnaire. Although the treating physician's handwriting is somewhat difficult to read, Dr. Dyess' notations are understandable when viewed in the context of the medical records. Nothing in Dr.

Dyess' notes indicates a recommendation that Johnson refrain from work or other physical activity on a long-term basis.  As previously discussed, Dr. Dyess recommended that Johnson engage in exercise.

The ALJ had before him sufficient medical evidence from which he could make a reasoned determination of Johnson's residual functional capacity.  Re-contacting the treating physician for additional information or clarification is unnecessary because substantial evidence supports the Commissioner's determination that Johnson is not disabled.  *See Shaw v. Astrue*, Fed. Appx. 684, 688-89 (11th Cir. 2010) (holding that the ALJ did not err by neglecting to re-contact the treating physician since additional contact is only necessary where the basis of the opinion cannot be ascertained); *Couch v. Astrue*, 267 Fed. Appx. 853, 855 (11th Cir. 2008) (holding that substantial evidence supported the ALJ's decision not to accord controlling weight to the treating physician's opinion and the ALJ was not required to re-contact the claimant's treating physician because the progress notes were adequate and the rest of the evidence supported the ALJ's decision); *Osborn v. Barnhart*, 194 Fed. Appx. 654 (11th Cir. 2006).  Furthermore, the court finds that the ALJ resolved any inconsistencies when he noted:

> Dr. Dyess' PCE forms in Exhibits 6F and 29F show a range of light work. There is a distinction between the current residual functional capacity and Dr. Dyess' most recent residual functional capacity in that he says the claimant can stand and walk 2 hours a day; and I have a sit/stand option. These residual functional capacities are not inconsistent; it is just that Dr. Dyess is limited by the nature of the form.

(R. 41).

After carefully reviewing the medical records, this court concludes that the ALJ did not err in failing to re-contact the treating physician.

The court finds that the ALJ adequately evaluated Johnson's functional limitations and restrictions in his decision. The ALJ found that Johnson "has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). . . ." (R. 29). The Regulation provides:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Social Security Ruling 96-8p requires that the ALJ consider all the evidence and assess the plaintiff's ability to do work-related activities, including sitting, standing, walking, lifting, carrying, pushing, and pulling. *See* SSR 96-8p at \*3, \*5 (1996). SSR 96-8p provides that, at Step 4 of the sequential evaluation, the RFC should not be expressed in terms of the exertional categories, such as "sedentary," "light," "medium," or "heavy." *Id*.

Social security rulings do not have the force and effect of statutes or regulations. *See Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *Fagan v. Astrue*, 231 Fed. Appx. 835, 837 n. 2 (10th Cir. 2007); *Walker v. Sec'y of Health and Human Servs*., 856 F.2d 1352, 1356 (9th Cir. 1988). However, the Rulings are generally entitled to deference.

*Fagan*, 231 Fed. Appx. at 837. In this case, the ALJ gave sufficient deference to the Ruling when making his residual functional capacity finding. SSR 96-8p does not require an ALJ to mechanically assess functions for which there is no credible evidence of impairment. The purpose of the function-by-function assessment is to insure that the ALJ does not overlook an important restriction and thereby incorrectly classify the individual's capacity for work. See SSR 96-8p, 1996 WL 374184, at *4. An ALJ need not provide superfluous analysis of irrelevant limitations or relevant limitations about which there is no conflicting medical evidence. *See Depover v. Barnhart*, 349 F.3d 563, 576-68 (8th Cir. 2003). The ALJ conducted a thorough analysis of the testimony and considered all of the objective medical evidence in reaching his decision.

Johnson also argues that the ALJ failed to apply SSR 83-10 properly because he did not consider the frequency or amount of time she would need to alternate sitting or standing when determining her residual functional capacity to perform light work. At the administrative hearing, the ALJ posed a hypothetical to the vocational expert which included a sit/stand option. "Although the ALJ did not specify in the hypothetical question posed to the VE the frequency with which Plaintiff needed to change [her] sit/stand position, the ALJ's instruction to the VE to include a sit/stand option . . . contains the reasonable 'implication' that 'the sit/stand option would be at [Plaintiff's] own volition.'" *Hart v. Colvin*, No. 5:12cv156-EMT, 2013 WL 4736841, *15 (N.D. Fla. August 30, 2013) (citing *Williams v. Barnhart*, 140 F. App'x 932, 937 (11th Cir. 2005) (per curiam)). *See also Emory v. Astrue*, No. 1:11cv2908-TWT-JFK, 2013 WL 1010660, *8 (N.D. Ga 2013) (quoting *Lucas v. Astrue*, 2012 WL 6043089, *4 (N.D. Ala. Dec. 4,

2012) (A "'common-sense reading of the ALJ's RFC assessment and the hypothetic question he posed to the [VE] is that the ALJ contemplated a sit/stand option at will.'"). Furthermore, Johnson has failed to present evidence showing that her need to sit or stand would prevent her from performing the jobs identified by the vocational expert, which she must do in order to be found disabled. *See Williams*, *supra*; *Emory*, *supra*; *Hart*, 2013 WL 4736841, *16. This court therefore concludes that the evidence fully supports the ALJ's findings concerning Johnson's ability to perform light work with a sit/stand option.

### B. Carpal Tunnel Syndrome

Johnson also argues that the ALJ should have further developed the record concerning her carpal tunnel syndrome. When discussing the effects of Johnson's carpal tunnel condition on her residual functional capacity to perform work, the ALJ found:

> . . . [Dr. Judson Moore, a hand surgeon,] assessed the claimant with cubital tunnel syndrome on the right and CTS bilaterally. He noted the claimant wanted to have something done about this; so he set her up for a right carpal tunnel and right cubital tunnel release. (Exhibit 3F).
>
> Dr. Moore performed the right carpal tunnel and cubital tunnel release on February 9, 2007, and was very pleased with the results. She was doing great; and her motion was "perfect." She had minimal swelling. Dr. Moore planned to see her again in 10 days, and noted she did not need any more pain medication. She said she was already sleeping better at night; and her numbness was gone. On February 28, 2007, Dr. Moore examined the claimant; and she had full range of motion. She reported she had normal sensation everywhere except for the ulnar border of her hand; but the finger had normal sensation. Dr. Moore again noted the claimant was very pleased with the results; and she wanted to have the left side done. However, her mother had a stroke; and she needed to take care of that. Dr. Moore assessed her with status post carpal and cubital tunnel syndrome releases on the right. He planned to see her back as needed, per her request.

> Dr. Moore believed she had issues with the left carpal tunnel; and the claimant was to schedule a follow up and possible surgery.
>
> The claimant underwent a consultative physical exam with Mark B. Ellis, DO, an internist, on June 18, 2009. The claimant told Dr. Ellis that she had symptoms of CTS in both wrists and hands, but had surgery on the right side approximately 3-4 years ago. The claimant said she felt that the hand symptoms are from her time working at a chicken plant. The claimant stated that she can lift 10-12 pounds on a one-time lift. The claimant was able to drive, and drove herself to the appointment. During the physical exam, the claimant had decreased range of motion in the cervical spine, shoulders and elbows; but she had full range of motion in the wrists. The claimant had normal bilateral ulnar deviation, radial deviation, flexion and extension. Her range of motion in all fingers was normal. No gross motor or sensory deficits were noted. The claimant was able to handle, manipulate and transfer objects from one hand to another. The cranial nerves appeared grossly normal. Deep tendon reflexes were 2/4 in the arms bilaterally. Dr. Ellis said the claimant had good sensation to light touch in all areas. The extremities had no atrophy, wasting or deformity noted. There was no clubbing cyanosis or edema present. Grip strength was 5/5 in each hand. (Exhibit 16F).
>
> In terms of the claimant's alleged status post right carpal and cubital tunnel release with carpal tunnel on the left, the fact that she underwent surgery suggests that the symptoms were genuine. However, it is offset by the fact that the record reflects that the surgery was generally successful in relieving the symptoms. (Exhibit 3F). While Dr. Dyess conducted NCV testing that showed some mild neuropathy, this was prior to her surgery; and her physical exams since then have shown that she is neurologically intact. (Exhibits 7F, 16F, 20F, 22F, 26F and 27F). Dr. Ellis noted in June 2009, that the claimant had 5/5 grip strength bilaterally; and she was able to handle, manipulate and transfer objects from one hand to another. (Exhibit 16F). Although the claimant's CTS has been treated with success, I have covered some potential difficulties with the manipulative limitations. I find that she is capable of lifting/carrying up to 20 pounds occasionally and 10 pounds frequently; and handling, fingering and feeling frequently.

(R. 33).

The ALJ's determination that Johnson has the residual functional capacity to perform light work, including handling, fingering, and feeling frequently, is supported by

substantial evidence. The medical records demonstrate that, on February 9, 2007, Dr. Judson Moore, an orthopedic surgeon, conducted a carpal and cubital tunnel release on Johnson's right hand. (R. 370). During a follow-up appointment on February 14, 2007, Dr. Moore noted that Johnson no longer needs pain medication, her numbness was gone, and that she reported sleeping better. (R. 365). On February 28, 2007, Johnson reported normal sensation everywhere except for the ulnar border of her hand, that she was very pleased, and that she would like to have her left side done as well. (R. 364). Dr. Moore noted that Johnson wished to wait until after her mother recovered from a stroke before scheduling surgery on the left. *Id*. He advised her to return as needed. *Id*. On June 18, 2009, Dr. Mark Ellis, a consultative physician, conducted a physical examination. (R. 515). Dr. Ellis noted that Johnson's wrist deviation, flexion, and extension were normal, that her elbow flexion was 130 degrees on the left and 150 degrees on the right, and that her finger flexion and extension were normal. (R. 517). In his July 14, 2011, report, Dr. Dyess found that Johnson was able to push and pull with her arms and grasp, twist, and handle objects occasionally and engage in fine manipulation frequently. (R. 649). This court has reviewed the medical records in their entirety. Despite Dr. Dyess' opinion that Johnson is able to handle objects occasionally, the medical records support the ALJ's opinion that Johnson has the residual functional capacity to perform light work. Thus, clarification or additional information concerning Johnson's carpal tunnel syndrome is unnecessary because substantial evidence supports the Commissioner's determination that Johnson is not disabled. *See Shaw v. Astrue*, *supra*; *Couch v. Astrue*, *supra*.

    Pursuant to the substantial evidence standard, this court's review is a limited one;

the entire record must be scrutinized to determine the reasonableness of the ALJ's findings. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). The ALJ evaluated all the evidence before her which led her to conclude that Johnson is able to perform light work with limitations. It is not the province of this court to reweigh evidence, make credibility determinations, or substitute its judgment for that of the ALJ. Instead the court reviews the record to determine if the decision reached is supported by substantial evidence. *Moore v. Barnhart*, 405 F.3d 108, 1211 (11th Cir. 2005). Substantial evidence "is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. Given this standard of review, the court concludes that the ALJ's residual functional capacity assessment is consistent with the medical evidence as a whole. After a careful examination of the administrative record, the court concludes that substantial evidence supports the conclusion of the ALJ concerning Johnson's residual functional capacity to perform light work with limitations.

### V. CONCLUSION

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that Plaintiff is not disabled. Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence. Accordingly, it is ORDERED that the decision of the Commissioner be and is hereby AFFIRMED.

DONE this 11th day of June, 2014.

      /s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE